April Hollingsworth (Bar No. 9391)
Katie Panzer (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE**
1881 South 110 East
Salt Lake City, Utah 84105
Tel: (801) 415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@ aprilhollingsworthlaw.com

*Attorneys for Plaintiff and*
*the Proposed Collective*

*Additional Counsel on Signature Page*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **KEVIN MCARDLE,** individually and on behalf of all persons similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**AMAZON.COM, INC.** and **AMAZON LOGISTICS, INC.,**<br><br>**Defendants.** | Civil Action No.: 23-cv-00121<br><br>**UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**District Judge Jill N. Parrish**<br><br>**Magistrate Judge Cecilia M. Romero** |

# TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF SOUGHT ...................................................... 1

II.     PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ........................... 3

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ...................................... 5

        A.     The Settlement Collective Members ............................................. 5

        B.     Calculation and Distribution of the Net Settlement Amount .................. 5

        C.     Reserve Fund ........................................................................ 7

        D.     Release of Claims .................................................................. 8

IV.     ARGUMENT ...................................................................................... 9

        A.     The Proposed FLSA Settlement Should Be Approved Because it is a Fair and
               Reasonable Resolution of a Bona Fide Dispute ................................. 9

               1.     A *Bona Fide* Dispute Existed Between the Parties ................... 10

               2.     The Proposed Settlement is Fair and Reasonable ..................... 11

        B.     The Proposed Settlement Furthers the Purpose of the FLSA ................ 15

        C.     Final Certification of the Settlement Collective is Appropriate ............. 15

        D.     The Incentive Award to Plaintiff is Justified and Should be Approved ...... 17

        E.     The Request for Plaintiff's Counsel's Fees Should Be Approved ............ 19

               1.     Amount Involved and High Degree of Success Obtained (Factor 8) ....... 20

               2.     Customary Fee and Awards in Similar Cases and Whether the Fee is Fixed
                      or Contingent (Factors 5, 6, and 12) .......................................... 21

               3.     Novelty and Difficulty of Question Presented by the Case, Skill Required
                      to Perform the Legal Service Properly, and Experience of Plaintiff's
                      Counsel (Factors 2, 3, and 9) .................................................. 23

               4.     Time and Labor Required (Factor 1) ........................................ 24

        F.     Plaintiff's Counsel's Costs Should Be Approved .............................. 25

V.      CONCLUSION ................................................................................... 26

## I.    <u>INTRODUCTION AND RELIEF SOUGHT</u>

Following extensive pre-litigation discussions and arm's length negotiations, including multiple mediation sessions facilitated and overseen by an experienced wage and hour mediator, Plaintiff Kevin McArdle ("Plaintiff") and Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (together, "Amazon," or "Defendants") have entered into a Settlement Agreement ("Settlement" or "Settlement Agreement") that resolves the claims alleged in this matter. The Settlement Agreement is fair and reasonable and warrants this Court's approval.

Plaintiff alleged that Defendants failed to pay Delivery Associate ("DAs") overtime compensation when they worked more than forty (40) hours in a workweek and failed to include all forms of payment in the regular rate for purposes of calculating overtime compensation, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Defendants continue to deny this and all other related allegations and disputes any liability. Defendants also disputed that a collective action was warranted under 29 U.S.C. § 216(b).

Following extensive pre-litigation discussions, arm's length negotiations, including three (3) day-long mediation sessions facilitated and overseen by experienced mediator, Dennis Clifford, Esq., the Parties have reached an agreement to settle the matter. *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") at ¶¶24-28. The terms of the Parties' settlement are set forth in the Settlement Agreement (which includes its exhibits), attached as Exhibit 1 to this Motion.

Pursuant to the Settlement Agreement, Defendants will pay a Gross Settlement Amount of One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00) into a Qualified Settlement Fund. As set forth in the Settlement Agreement, Named Plaintiff and Collective Members will be entitled to receive a portion of the Gross Settlement Amount in accordance with the Settlement's terms in exchange for their release of their federal and state law wage claims that

accrued to them against Defendants during the Relevant Time Period. Each Settlement Collective Member will receive a Notice of Settlement as well as a check representing their share of the Settlement, and by cashing the Settlement Award check, the Settlement Collective Member will be deemed to have opted into the Action for purposes of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and will have released their claims per the Settlement Agreement.

The proposed Settlement Agreement satisfies the criteria for approval of an FLSA collective action settlement because it is a fair and reasonable resolution of a *bona fide* dispute reached by counsel with extensive experience in complex employment law cases, and after arm's-length negotiations assisted by an experienced wage and hour mediator. Plaintiff's Counsel believe that the negotiated Settlement Agreement provides an excellent resolution of this litigation, especially when considering that the litigation, if not settled now, might result in no recovery or a less favorable recovery. *See* Schalman-Bergen Decl. at ¶¶ 3, 35-37.

Plaintiff respectfully moves the court for an Order: (i) approving the Parties' Settlement Agreement[1] and finding that this settlement is a fair and reasonable resolution of a *bona fide* dispute; (ii) certifying the Settlement Collective as a collective action for purposes of settlement pursuant to 29 U.S.C. § 216(b); (iii) approving the Notice of Settlement and dissemination of the same; (iv) approving the Service Award to Plaintiff McArdle; (v) approving Plaintiff's Counsel's requests for attorneys' fees and costs; (vi) approving Utah Legal Services as the *cy pres* recipient for any monies remaining in the Reserve Fund; (vii) barring any claims released by the Settlement Agreement by Plaintiff and any member of the Settlement Collective who participates in the settlement as set forth in the Settlement Agreement; and (viii) dismissing the litigation and all

---

[1]    Unless otherwise identified, capitalized terms have the meaning ascribed to them in the Parties' Settlement Agreement.

claims in the litigation with prejudice, while still retaining jurisdiction to implement and enforce the terms of the Settlement Agreement. Defendants do not oppose this Motion.

## II.    **PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS**

Plaintiff and Settlement Collective Members are Delivery Associates ("DAs") who were paid by AZ Transport Group LLC ("AZTG") to deliver packages purchased by consumers on Amazon.com at any time between January 23, 2017, and November 10, 2018. Plaintiff alleges that Defendants violated the FLSA, by *inter alia*, failing to pay for all hours worked including for overtime wages owed.

On April 26, 2019, Plaintiff, through counsel, notified Defendants of alleged wage-related claims against AZTG and Defendants that he intended to file on behalf of himself and a collective of similarly situated individuals, and invited Defendants to explore the potential for pre-litigation resolution of those alleged claims. The Parties agreed to engage in such discussions. Schalman-Bergen Decl. at ¶23.

The Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims, which continued for more than three years. This process consisted of extensive ADR-related exchange of information and three mediation sessions overseen by an experienced wage and hour mediator, Dennis Clifford, Esq. The mediation sessions took place on July 28-29, 2021; October 27-29, 2021; and March 8, 2022, in Chicago, Illinois. The mediation sessions were attended by the mediator, counsel for the Parties, and in-house counsel for Amazon. Throughout this ADR process, the Parties, by and through their counsel, engaged in dozens of telephonic and video discussions, as well as written correspondence and negotiations overseen by Mr. Clifford. *Id.* at ¶24.

In order to appropriately inform the ADR process, the Parties exchanged data and information in connection with the threatened claims, including AZ Transport's payroll data as

well as Amazon's delivery data for DAs who were paid by AZTG and delivered packages to customers of Amazon.com, which Plaintiff's Counsel reviewed and analyzed extensively. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations. *Id.* at ¶25.

The Parties' investigations, substantial discovery, and extensive arms-length negotiations with the aid of Mr. Clifford resulted in this Settlement. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Defendants further deny that they are a joint employer of the DAs. The Parties have agreed to settle the action in accord with the terms of the Settlement Agreement.

As a result of the ADR process (including the exchange of information), mediations, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. Plaintiff's Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiff has considered: (a) the facts developed during the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiff has concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiff and the Settlement Collective Members to settle their claims against Defendants and the Released Parties. *Id.* at ¶27.

Plaintiff now presents the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiff and the Collective Members will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various

defenses to their liability. The Parties have spent considerable time analyzing the data and negotiating and drafting the Settlement Agreement, which ensures that all Collective Members are provided with notice of the Settlement Agreement and its terms. For the reasons set forth herein, Plaintiff asks the Court to approve the Settlement.

### III.    THE TERMS OF THE SETTLEMENT AGREEMENT

#### A.    The Settlement Collective Members

The Agreement provides that Settlement Collective Members include Plaintiff and all Delivery Associates who were paid by AZ Transport Group, LLC to deliver packages to customers of Amazon.com in the United States at any time between January 23, 2017, through November 10, 2018. Agreement ¶11(s).

The Parties have stipulated that for settlement purposes only, certification of the Settlement Collective as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. Agreement ¶9. Each Settlement Collective Member will be fully advised of this Settlement with the Notice of Settlement.

#### B.    Calculation and Distribution of the Net Settlement Amount

The Gross Settlement Amount to be paid by Defendants is One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00). Agreement ¶11(h). The settlement administration costs and the employer's share of payroll taxes will be paid separately. *Id*. ¶¶ 11(j), 17(b). The Gross Settlement Amount includes: (i) Ten Thousand Dollars ($10,000.00) in total to the Named Plaintiff for his efforts in bringing and prosecuting this matter and for his broader release of claims in favor of Defendants ("Service Award"); (ii) Plaintiff's Counsel's attorneys' fees not to exceed one-third (1/3) of the Gross Settlement Amount, plus Plaintiff's Counsel's out-

of-pocket costs that are not to exceed Fifteen Thousand Dollars ($15,000.00); and (iii) a Five Thousand Dollar ($5,000.00) Reserve Fund. *Id*. ¶¶11(h), (j).

After subtracting these amounts from the Gross Settlement Amount, the balance ("Net Settlement Amount") will be distributed to the Settlement Collective within ten (10) calendar days of receipt by the Settlement Administrator (*Id*. ¶ 17) in accordance with the following objective formula:

- $50 per Settlement Collective Member will be deducted from the Net Settlement Amount prior to the determination of pro rata individual settlement shares and allocated to each Settlement Collective Member so that each Settlement Collective Member receives at least $50 in exchange for their release in this Settlement Agreement.

- In addition to the $50 payment set out in (a) above, Settlement Collective Members shall receive a pro rata portion of the Net Settlement Amount as follows:

  o For each workweek during which the Settlement Collective Member worked more than four (4) or more days during the Relevant Time Period and was paid by AZTG, the Settlement Collective Member shall receive one (1) settlement share.

  o The total number of settlement shares for all Settlement Collective Members in the Relevant Time Period will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award.

*Id*. ¶¶ 20(a)-(b).

All Settlement Award checks to Settlement Collective Members shall remain negotiable for one-hundred eighty (180) days from the date they are issued and shall be accompanied by the Settlement Notice when they are sent to Settlement Collective Members. *Id*. ¶ 25. The Settlement Administrator shall send a reminder letter via U.S. mail and email to those who have not yet cashed their settlement check after sixty (60) days and may call those that have still not cashed their check to remind them to do so within the last sixty (60) days of the Check-Cashing Period. *Id*. Any amounts from uncashed settlement checks remaining after the 180-day period will be paid back to

Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against the Defendants. *Id.*

For tax purposes, fifty percent (50%) of the Settlement Awards to Settlement Collective Members will be considered wages subject to the withholding of all applicable local, state, and federal taxes. *Id.* ¶ 24. The remaining fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered liquidated damages. *Id.*

### C.    Reserve Fund

The Parties have agreed that the Settlement Administrator will set aside a $5,000 Reserve Fund from the Gross Settlement Amount to account for any potential disputed, belated, or unexpected payments to Settlement Collective Members after Settlement Awards have been issued during the 180-day Check Cashing Period. Agreement ¶19. The Reserve Fund shall be held by the Settlement Administrator for a period of one hundred (100) days after the Check Cashing Period. In the event that any funds remain in the Reserve Fund following this period, such funds shall be sent to Utah Legal Services, as a *cy pres* recipient agreed to by the Parties, subject to the Court's approval.[2] *Id.*

---

[2]    Utah Legal Services is a non-profit legal assistance organization that is committed to making equal justice a reality by providing free legal help in non-criminal cases to low-income Utahns. *See* https://www.utahlegalservices.org. Courts in the Tenth Circuit routinely approve distributions to *cy pres* recipients, such as Utah Legal Services. *Tennille v. W. Union Co.*, 809 F.3d 555, 560 (10th Cir. 2015) ("The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.").

### D. Release of Claims

The Settlement Awards are checks that contain a limited endorsement placed on the back of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt-in to this collective action, defined by its caption and release the Released Claims as follows:

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com, Inc., Amazon Logistics, Inc., AZ Transport Group, LLC, and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *McArdle v. Amazon.com, Inc., et al*. I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.[3]

*Id.* ¶ 23.

In exchange for the Settlement benefits, participating Settlement Collective Members will release all Fair Labor Standards Act claims, and state, municipal, or local wage and hour claims that accrued to the Settlement Collective Members against the Released Parties while working to deliver packages to Amazon customers in the United States while being paid by AZTG at any time between January 23, 2017 through November 10, 2018, including but not limited to claims under the FLSA and the states of Arizona, Utah, Colorado, and Nevada, or any other federal, state or local wage and hour law, pertaining to the alleged failure to pay for all hours worked, claims for unpaid wages (including overtime compensation), claims for working through meal or rest periods, and related claims for liquidated damages, interests, penalties, fees or costs, that were or could

---

[3]    The "Released Parties" are Amazon.com, Inc., Amazon Logistics, Inc., and AZ Transport Group, LLC, and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them. Agreement ¶ 11(o).

have been asserted in the lawsuit based upon the facts alleged in the operative complaint.

In addition, and in consideration for his Service Award, Plaintiff McArdle will provide a broader release to the Releasees. *Id.* ¶ 13.

## IV.   ARGUMENT

### A.   The Proposed FLSA Settlement Should Be Approved Because it is a Fair and Reasonable Resolution of a Bona Fide Dispute

Courts have found that collective action settlements under the FLSA must be approved by the district court. *See Keel v. O'Reilly Auto Enters., LLC*, No. 2:17-cv-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018) ("The Tenth Circuit has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, but district courts within this district and within the Tenth Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary.")  (Parrish, J.); *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F. 2d 1350, 1354 (11th Cir. 1982). The standard for approval of an action arising under the FLSA requires only a determination that the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127-128 (D. Colo. 2016) (citing *Lynn's Food Stores*, 679 F. 2d at 1355). "To approve an FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all parties; and (3) the proposed settlement contains a reasonable award of attorneys' fees. *See Keel*, 2018 WL 10509413, at *2. As discussed below, these factors are satisfied here.

Further, because there are no Rule 23 class claims in this case, Rule 23 does not apply, and the Court may grant approval to the FLSA settlement via a one-step process. *See* 29 U.S.C. § 216(b). *See, e.g.*, *Abernathy v. Molina Healthcare, Inc.*, Final Approval Order and Final

9

Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving one-step method for distribution of settlement notice and settlement payments); *Stenulson v. ROI Solutions, LLC*, Dkt. No. 149, No. 2:20-cv-00614 (D. Utah October 11, 2022) (same); Lopez *v. T/J Inspection, Inc.,* Order and Judgment, Dkt. No. 59, No. CIV-16-148-M (W.D. Okla. April. 12, 2017) (same). That is because, in contrast to Rule 23 class settlement procedures where potential class members are automatically bound by the settlement unless they actively opt-***out***, in a collective action under 29 U.S.C. § 216(b), eligible collective members must affirmatively "opt-***in***" to be bound by the Settlement and release their claims. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). And here, as stated, eligible collective members "opt-in" by cashing or depositing their checks; any eligible collective member who does not deposit or cash their check will not release any claims. *See* Agreement ¶¶11(n), 12, 23.

## 1.  A *Bona Fide* Dispute Existed Between the Parties

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute…" 679 F. 2d at 1354. To establish a *bona fide* dispute, parties requesting court approval must present to the court: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Keel*, 2018 WL 10509413, at *2.

Here, with regard to the wage claims at issue in this case as set forth in the Complaint, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1) the extent to which DAs were compensated for all overtime hours worked;
2) the appropriate rate at which overtime should have been paid when DAs worked more than forty (40) hours per week (i.e., half-time or time-and-one-half the regular rate);
3) whether Defendants would be able to meet their burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;
4) whether Amazon could be held liable for the alleged pay violations as a joint employer;
5) whether Plaintiff could obtain and maintain a collective action status of the action; and
6) whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

*See* Schalman-Bergen Decl. ¶26.

Accordingly, a *bona fide* dispute over FLSA provisions exists here. Ultimately, the Gross Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. *See, e.g., Bracamontes v. Bimbo Bakeries USA, Inc.*, No. 15-CV-02324-RBJ-NYW, 2018 WL 6790171, at *2 (D. Colo. Oct. 10, 2018) (finding *bona fide* dispute existed where there was a dispute over whether the Defendant violated the FLSA and the extent of damages Plaintiff could have received); *accord Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *4 (D. Utah Sept. 30, 2015).

### 2.   The Proposed Settlement is Fair and Reasonable

"To be fair and reasonable an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Keel*, 2018 WL 10509413, at *3 (citation omitted). "Normally a settlement is approved where it is the result of contentious arm's length negotiations, which were undertaken in good faith by counsel… and serious questions of

law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief…" *Bracamontes*, 2018 WL 6790171, at *2 (citation omitted).

In assessing whether a proposed settlement is fair and reasonable, the court must consider four non-exhaustive factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Keel*, 2018 WL 10509413, at *3 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

The Parties have fully analyzed the pertinent factual and legal issues in this case, and have assessed the strengths and weaknesses of the claims and defenses at issue. The Settlement reached represents an excellent result for the Settlement Collective Members. There is no indicia of fraud or collusion with respect to this proposed Settlement, which was reached after arm's-length negotiations, including multiple mediation sessions conducted by an experienced wage and hour mediator, and after (1) the exchange of substantial data and analyses, and (2) numerous meet and confers regarding potential exposure. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, the Parties have agreed to this Settlement as a fair and reasonable resolution of this case. *See generally* Schalman-Bergen Decl.

The Net Settlement Amount will be distributed to the Settlement Collective under an allocation formula that credits individuals with settlement shares for each workweek in which four or more days were worked during the Relevant Time Period, and which provides for a minimum payment to each Settlement Collective Member. *Id*. ¶ 20 (describing allocation formula). *See Lucas v. Kmart Corp*., 234 F.R.D. 688, 695 (D. Colo. 2006) ("An allocation formula need only

have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quotation and citation omitted). The settlement checks will be provided to Settlement Collective Members with the proposed Notice, which is attached to the Settlement Agreement as Exhibit A. Agreement ¶ 25. The Agreement provides what Plaintiff believes is the fairest and most practicable procedure and form of Notice for notifying Settlement Collective Members of the terms of and their respective rights under the Settlement Agreement.[4]

Further, a trial on the merits would involve significant risks for Settlement Collective members given the disputed serious questions of law and fact in the case, including – as in any FLSA case – the risk that the Settlement Collective members would not succeed in obtaining and then maintaining a collective through trial. While Plaintiff believes the case was very strong, the outcome of the litigation is far from certain and, if not settled, would require significant factual development, and would be subject to the risk that even a favorable verdict at trial could be delayed based on any appeals by Defendants. The Settlement provides an excellent result to Settlement Collective Members. Schalman-Bergen Decl. ¶35-36. Plaintiff's Counsel engaged in an extensive analysis of the data provided and performed damages calculations using various assumptions about the amount of time worked in each workweek that appeared in data provided by Defendants, and

---

[4]        The proposed Notice is clear and straightforward, and provides information regarding the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the settlement will provide to Settlement Collective members, the allocation method, the scope of the release, the request for an incentive award for the named Plaintiff, the request for attorneys' fees and costs, the deadline for cashing the settlement check, and their rights should they not cash the check. Agreement, Ex. A; *see, e.g., Price v. Devon Energy Corp.*, No. 220CV00316KWRGJF, 2021 WL 2312537, at *1 (D.N.M. May 24, 2021) ("[T]he Court finds that the parties have created an adequate record explaining why prior notice to the opt-in class is not necessary. The parties will send notice to the proposed collective action members to opt-in, and therefore this settlement does not bind them unless they opt in. Each individual will in effect receive an individual settlement offer, and each person can decide to accept or reject the offer."); *also Abernathy*, Final Approval Order and Final Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving settlement notice in one-step FLSA settlement).

the rate of overtime they would have been owed if Plaintiff prevailed on all claims. Ultimately, the Gross Settlement Amount agreed upon represents a compromise amount that totals more than approximately 3.92 times Plaintiff's lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper. *Id*. ¶¶ 32-33. This will result in significant amounts of compensation being paid to the workers who worked for relatively short periods of time in workweeks between January 23, 2017, and November 10, 2018. *Id.* The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this excellent settlement. *Id*. ¶¶ 34-35. *See Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *5 (D. Utah Sept. 30, 2015) ("The substantial risks to both parties in continuing to litigate the case additionally make resolution through settlement more valuable than the mere possibility of a more favorable outcome after further litigation.").

As to the fourth factor, the Parties, represented by experienced counsel, and with the assistance of experienced mediator Dennis Clifford, Esq., ultimately agreed to this settlement as a fair and reasonable resolution of the action, *see* Schalman-Bergen Decl. ¶¶ 27-28. *Campbell*, 2015 WL 5773709, at *5 (approving settlement as "fair and reasonable" where it is "the product of negotiation between represented parties' during private mediation, which supports a finding that it 'did not come about because of overreaching by the employer.") (internal citations and quotations omitted). Plaintiff's Counsel are experienced and respected class and collective action litigators, including in the area of employment law. *See generally* Schalman-Bergen Decl. Based on Plaintiff's Counsel's knowledge and expertise, they believe this settlement will provide a substantial benefit to the Settlement Collective. *Id*. at ¶37. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus v.*

*State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002). Accordingly, these factors support approval of the settlement as fair and reasonable.

### B.   The Proposed Settlement Furthers the Purpose of the FLSA

The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the settlement further the purposes of the FLSA by providing Plaintiff and the Settlement Collective Members, DAs earning relatively low wages, with substantial recovery of their alleged unpaid overtime, that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency…"). Importantly, all Settlement Collective Members will automatically receive a settlement award without having to file a claim form and will not release any claims *unless* they cash or deposit their check. Agreement ¶ 25; Schalman-Bergen Decl. ¶ 30. Because the Settlement advances the goals of the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### C.  Final Certification of the Settlement Collective is Appropriate

The Court should also certify the collective as meeting the "similarly situated" requirement under 29 U.S.C. § 216(b) for settlement purposes only. *See, e.g., Abernathy*, Final Approval Order and Final Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (certifying collective for settlement purposes). Although the FLSA does not define "similarly situated," the Tenth Circuit has followed a two-step approach to determine, "on an *ad hoc* case-by-case basis" whether collective members are "similarly situated" within the meaning of section 216(b) of the

FLSA, which is "not tied to the Rule 23 standards." *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F. 3d 1095, 1102, 1105 (10th Cir. 2001).

At the first stage, before discovery is completed, the burden is "lenient." At the second stage, which may be prompted by a motion to decertify the collective, the court considers several factors, including: (1) "[the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103.

The DAs to whom Plaintiff seeks to send settlement notice are similarly situated in that 1) they all performed uniform services which Plaintiff alleges were at the direction of Defendants to deliver packages purchased by Amazon.com customers; 2) they all performed work pursuant to a single contract for one DSP; 3) they were all paid pursuant to a day rate compensation policy that Plaintiff alleges violated the FLSA until such time that AZTG was allegedly directed to cease paying DAs on a day rate basis by Amazon; and 4) were not paid overtime for all hours worked over forty (40) in a single work week. As such, Plaintiff easily satisfies the criteria for issuance of notice under 29 U.S.C. § 216(b), which will permit all members of the Settlement Collective to receive payment for the alleged uncompensated wages that they were denied during the course of their work. Numerous courts have certified similar classes and collectives of DAs performing similar work for DSPs performing contracts with Amazon in cases around the country.[5]

---

[5]     *Hickman v. TL Transportation, LLC*, No. 2:17-cv-01038, (Dkt. No. 130); *Hickman*, 317 F. Supp. 3d 890 (E.D. Pa. 2018); and *Hickman*, 318 F. Supp. 3d 718 (E.D. Pa. 2018) (settlement on behalf of DAs in class and collective wage claim against Amazon and DSP; favorable opinions obtained on liability, personal jurisdiction, DSP owner individual liability, and certification); *see also Gongaware v. Amazon.com, LLC et al.*, No. 1:18-cv-08358 (N.D. Ill. May 24, 2021) (Dkt. No. 101) (DAs represented by Undersigned Counsel certifying for settlement purposes "a class and collective of … all [DAs] who were paid by Defendant Sheard-Loman Transport, LLC to deliver packages to Amazon customers …."); *Southern Star Express, LLC v. Dorian J. Page*, No. 5:19-cv-01423 (W.D. Tex. Mar. 31, 2021) (Dkt. No. 42) (DAs represented by Undersigned

In addition, because this settlement resolves only FLSA claims on behalf of the Settlement Collective, the due process concerns and procedure for approval of class action settlements under Fed. R. Civ. P. 23 do not apply. This is especially true because participation in the settlement is purely voluntary - the proposed Notice makes clear that only Settlement Collective members who cash, sign, or deposit their settlement check will release their claims. Agreement ¶¶11(n), 12, 23. Under such circumstances, courts in this Circuit authorize that Notice be sent to Settlement Collective members with their settlement awards in a "one-step" settlement approval process. *See, e.g.*, *Abernathy*, Final Approval Order and Final Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving one-step method for distribution of settlement notice and settlement payments); *Lopez*, Order and Judgment, Dkt. No. 59, No. CIV-16-148-M (W.D. Okla. April. 12, 2017) (same).

Accordingly, for the foregoing reasons, Plaintiff requests that the Court find that the Settlement Collective members are, for purposes of this settlement, "similarly situated" and finally certify the Settlement Collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only.

### D.  The Incentive Award to Plaintiff is Justified and Should be Approved

The settlement provides for a service award to Plaintiff McArdle in the amount of Ten Thousand Dollars ($10,000.00), in recognition of his efforts in bringing and prosecuting this matter on behalf of the proposed Settlement Collective. He will also provide a broader release against

---

Counsel approving settlement on behalf of collective of "all current and former [DAs] paid by Southern Star to deliver packages to customers of Amazon…"); *Green v. Amazon.com, LLC et al.*, No. 1:18-cv-1032 (M.D.N.C. Oct. 26, 2020) (Dkt. No. 38) (DAs represented by Undersigned Counsel certified for settlement purposes on behalf of "all current and former [DAs] who were paid by Defendant Valdivia to deliver packages to customers of Amazon.com …"); *Gaines v. Amazon.com, LLC, et al.*, No. 1:19-cv-00528-WMR (N.D. Ga. Jun. 22, 2020) (Dkt. No. 72) (DAs represented by Undersigned Counsel with collective certified for settlement purposes on behalf of "Plaintiff, Opt-In Plaintiffs, and all current and former [DAs] who were paid by Defendant on the Go to deliver packages to customers of Amazon.com …").

Defendants. Agreement ¶¶ 11(j), 13, 21. Subject to Court approval, this amount will be paid in addition to Plaintiff's award from the Net Settlement Amount as a member of the Settlement Collective under the Agreement.

Courts routinely approve service awards to compensate named plaintiffs for the "personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009); *see also, e.g., Campbell,* 2015 WL 5773709, at *8 (same); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (same).

Here, Plaintiff worked with Plaintiff's Counsel providing valuable background information about his employment, about Defendants' policies and practices, and about the allegations in the lawsuit, and regularly conferred with Plaintiff's Counsel. Schalman-Bergen Decl. at ¶¶ 38-39.  He agreed to put his name on a lawsuit in the public docket, and by doing so, Plaintiff's Counsel believes he undertook a substantial direct and indirect risk in the community and in his field of employment by being the face of the litigation in order to participate in this case on behalf of his former fellow employees. *Id*. Plaintiff spent a great amount of time assisting Plaintiff's Counsel with this matter, including providing information and documents to Plaintiff's Counsel, he worked closely with counsel to prepare for the mediations and provided critical information. *Id*. Plaintiff also communicated with Plaintiff's Counsel throughout the settlement process and spent substantial time reviewing and approving the proposed settlement agreement. *Id*. As a result of Plaintiff's active assistance in prosecuting this case, Settlement Collective Members will receive a significant benefit in the form of monetary compensation for alleged unpaid wages. *Id*.

This additional payment requested in this case is also in line with those approved in wage

and hour collective and class actions in the Tenth Circuit. *See, e.g., Cazeau*, 2021 WL 1688540, at *8 (approving incentive awards of $12,500 to each of two lead plaintiffs and $2,500 to third lead plaintiff); *Campbell,* 2015 WL 5773709 (approving $7,500 service award to each of seven named plaintiffs); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. 2014) (approving $15,000 service award to named plaintiff); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving $15,000 service award); *see also, e.g., Abernathy*, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving $10,000 service award to named plaintiff). Accordingly, the Service Award to Plaintiff should be approved.

### E.  The Request for Plaintiff's Counsel's Fees Should Be Approved

Finally, Plaintiff's Counsel's request for attorney's fees of $400,000.00, or one-third of the Gross Settlement Amount, as well as reimbursement of costs not to exceed Fifteen Thousand Dollars ($15,000.00) (Agreement ¶¶ 11(j), 22) is reasonable and should be approved.  Courts within the Tenth Circuit recognize that a one-third award is well within the range of percentages that are reasonable.  *See, e.g., Voulgaris v. Array Biopharma, Inc.*, No. 22-1003, -- F.4[th] --, 2023 WL 2250931, at *2 (10th Cir. Feb. 27, 2023) (" . . . we reiterate our prior recognition that awards across a range of percentages may be reasonable," and affirming award of 33% as reasonable).

Critically, an award of attorney's fees under the FLSA is mandatory:  the FLSA provides that the "court . . . ***shall***,, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added).  And here, "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Voulgaris* 2023 WL 2250931, at *2 (alterations, quotation marks, and citation omitted).  In common fund cases, the Tenth Circuit has expressed a preference for the percentage-

of-the-fund approach (as opposed to the lodestar method) for determining attorney fee awards.  *Id.* (explaining that "[w]e have approved both methods in common-fund cases, although expressing a preference for the percentage-of-the-fund approach" (quotation marks and citation omitted)); *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019) ("The Tenth Circuit prefers the percentage of the fund method in determining the award of attorneys' fees in common-fund cases").

In determining what constitutes a "reasonable" percentage fee award in the Tenth Circuit, courts consider the following *Johnson* factors:  (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Voulgaris* 2023 WL 2250931, at *2 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).  The court need not consider every single *Johnson* factor. *See, e.g.,* *Nakamura*, 2019 WL 2185081, at *2 (D. Kan. May 21, 2019) ("Not all *Johnson* factors will apply in every case.")  As explained below, application of these factors supports approval of the requested fee in this case.  Plaintiff addresses these factors by order of importance. *See id.*[6]

### 1.  Amount Involved and High Degree of Success Obtained (Factor 8)

---

[6]    Further, it bears noting that "[a] request for attorneys' fees generally should not result in a second major litigation." *Voulgaris*, 2023 WL 2250931, at *1.  As such, Plaintiff submits that a negotiated fee is preferable, and here, as part of the Settlement, Defendants agreed not to object to an award of $400,000.00 in attorneys' fees and reimbursement of out-of-pocket costs not to exceed $15,000.00.

"The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Nakamura*, 2019 WL 2185081, at *2 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quotation marks and alterations omitted). Here, the Gross Settlement Amount of $1,200,000.00 is an excellent recovery for the Settlement Collective members in view of the difficulties and risks that plaintiffs face in any complex wage and hour litigation to prevail on the merits and to obtain and maintain certification of a collective. *See* Schalman-Bergen Decl. at ¶¶35-37. Here, for example, Defendants were prepared to argue that Amazon was not a joint employer of the DAs, and therefore was not liable for the alleged pay violations. *Id*. at ¶26. Among other things, Defendants also disputed the amount of time the DAs spent performing their work, and the appropriate rate at which overtime should be calculated. *Id*. As described above in Section IV(A)(2), the Gross Settlement Amount represents a compromise amount that totals more than approximately 3.92 times Plaintiff's lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper. And as described in the Declaration of Sarah Schalman-Bergen, the Settlement provides an excellent recovery and will result in significant amounts of compensation being paid to the workers who worked for relatively short periods of time in workweeks between January 23, 2017, and November 10, 2018.  This factor is satisfied. *See* Schalman-Bergen Decl. ¶¶34-37. *See Brown*, 838 F. 2d at 456 (results obtained by settlement "may be given greater weight [in the *Johnson* analysis] when the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"); *accord Nakamura*, 2019 WL 2185081, at *2.

### 2.  Customary Fee and Awards in Similar Cases and Whether the Fee is Fixed or Contingent (Factors 5, 6, and 12)

Plaintiff's Counsel seek a fee award of $400,000.00, which is one-third of the Gross Settlement Amount. As noted above, this percentage is well within the range approved by courts

in this district and Circuit in similar cases. *See, e.g., Voulgaris* 2023 WL 2250931, at \*2 (10th Cir. Feb. 27, 2023) (" . . . we reiterate our prior recognition that awards across a range of percentages may be reasonable," rejecting argument that Tenth Circuit imposes a 25% benchmark, and affirming award of 33%); *accord Nakamura*, 2019 WL 2185081, at \*2 (explaining that "fee award of one-third of the common fund was well within the range typically awarded in class actions" and explaining that courts in the Tenth Circuit have awarded fees *above* one-third given the complex and risky nature of class actions); *McKeon v. Integrity Pizza LLC*, No. 18-CV-0932-WJM-KLM, 2020 WL 6782238, at \*5 (D. Colo. Nov. 18, 2020) (finding requested fee of one-third of settlement in wage and hour case to be reasonable and "in line with contingency fee awards approved in other cases"). *See also, e.g., Abernathy,* Final Approval Order and Final Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving request for fees in the amount of one-third the settlement amount in FLSA collective action); *Stenulson v. ROI Solutions, LLC*, Dkt. No. 149, No. 2:20-cv-00614 (D. Utah October 11, 2022) (approving request for fees in the amount of 40% of settlement in FLSA collective action).

Moreover, the fact that Plaintiff's Counsel agreed to represent Plaintiff and the proposed Settlement Collective on a contingent basis also supports approval of the requested fee. "Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel." *Nakamura*, 2019 WL 2185081, at \*2. By permitting clients to obtain attorneys without having to pay hourly fees, contingent fee arrangements provide critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. And here, Class Counsel pursued this action on a complete contingent basis and has spent time and expended significant costs to pursue this matter, with no guarantee of recovery. Class Counsel advanced all costs, and, had there been no recovery,

Class Counsel would not have been paid a fee or reimbursement of their expenses.  Schalman-Bergen Decl. ¶ 42.  *See, e.g., Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *10 (S.D. Ohio Jan. 19, 2022) ("Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." (quotation marks and citation omitted); *accord Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013).[7]

Further, relevant here, the FLSA is a remedial statute designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of this statute. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to have their rights vindicated would have difficulty obtaining qualified counsel.

### 3. Novelty and Difficulty of Question Presented by the Case, Skill Required to Perform the Legal Service Properly, and Experience of Plaintiff's Counsel (Factors 2, 3, and 9)

As described above, this case involves numerous disputed issues of fact and law, including: 1) the extent to which DAs were compensated for all overtime hours worked; 2) amount of time the DAs spent performing their work; 3) the appropriate rate at which overtime should be paid

---

[7]    The significant investment of time and financial resources and the risk of nonpayment also relates to the undesirability of the case (factor 10).  And further, because of the time and labor required to prosecute this FLSA case, Plaintiff's Counsel were "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a possible recovery in a contingent fee case." *Whittington*, 2013 WL 6022972, at *6 (D. Colo. Nov 13, 2013). Thus, the "preclusion of other employment" factor (factor 4) also supports approval of the requested fee. *Id*

when DAs were paid a day rate; and 4) whether Defendants would be held liable for the alleged pay violations as a joint employer. Defendants denied liability and also denied that the potential Settlement Collective members were "similarly situated" and Plaintiff would therefore face barriers in attaining and maintaining a collective. Thus, an outcome of zero recovery for the Plaintiff and Settlement Collective remained possible. Plaintiff's Counsel accepted these risks, and negotiated a meaningful and substantial recovery.

The wage and hour issues in this matter are governed by highly technical and constantly-evolving federal FLSA law and regulations. *See, e.g., Genesis Healthcare Corp.*, 569 U.S. at 74 (noting that FLSA collective actions are "fundamentally different" from typical class actions). As evidenced by Ms. Schalman-Bergen's Declaration, Plaintiff's Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective actions. *See* Schalman-Bergen Decl. ¶¶ 4-20; 41.

Counsel have demonstrated their ability by achieving excellent results for the Settlement Collective in this case. The Settlement reached, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA, is a reflection of Class Counsel's experience. This Settlement was reached after several mediation sessions and the substantial exchange and review of documents and data. *See generally* Schalman-Bergen Decl. The Settlement provides Plaintiff and members of the Settlement Collective with substantial benefits without having to wait for potentially many more years of drawn-out litigation.

### 4. Time and Labor Required (Factor 1)

In awarding attorneys' fees in common fund factors, the 'time and labor' factor "need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Voulgaris*, 2023 WL 2250931, at *4 (quoting *Brown*, 838 F.2d at 456); *accord*

*Nakamura*, 2019 WL 2185081, at *3 (explaining "in the percentage-fee determination, the court need not conduct a lodestar analysis to assess reasonableness"). Here, the benefits to Plaintiff and the Settlement Collective are substantial and demonstrate the reasonableness of the requested fee. As discussed throughout, the settlement provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. And, indeed, the Gross Settlement Amount represents approximately 3.92 times Plaintiff's lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper. Schalman-Bergen Decl. at ¶ 33.

As the Tenth Circuit affirmed last week, a lodestar cross check is not required here, *see Voulgaris,* 60 F.4th 1259 ("the district court was not required to perform a lodestar cross-check"). In any event, the time and labor required factor supports the requested fee. Plaintiff notes that Class Counsel collectively have spent hundreds of hours over the course of several years investigating and bringing this case to a successful settlement for the benefit of the Settlement Collective, as described above and as summarized in the Declaration of Sarah Schalman-Bergen. Such efforts have included developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; engaging in extensive ADR-related discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending three mediation sessions; conducting dozens of telephonic and video meet and confer sessions; engaging in written correspondence and negotiations overseen by Mr. Clifford; and finalizing the Settlement Agreement. *See* Schalman-Bergen Decl. ¶¶ 21-43. Moreover, Plaintiff's' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement. *Id*. at ¶ 40.

### F. Plaintiff's Counsel's Costs Should Be Approved

In addition to reasonable attorneys' fees, the FLSA provides for reimbursement of "costs

of the action." *See* 29 U.S.C. § 216(b). *See also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("[A]n attorney who creates…. a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred." (citation and quotation marks omitted)). Plaintiff's Counsel seeks reimbursement of costs not to exceed $15,000.00, as set forth in Plaintiff's Counsel's accompanying Declaration. *See* Schalman-Bergen Decl. at ¶44.  Class Counsel will continue to incur costs associated with this litigation, and in the event the total expenses ultimately exceed the $15,000 amount allocated for costs in the settlement, Class Counsel will not seek reimbursement of costs exceeding that cap.

As set forth in the Schalman-Bergen Declaration, these costs include reasonable out-of-pocket expenditures. These expenses reflected in the accompanying Declaration are of the type typically billed by attorneys to paying clients, such as mediation costs and legal research costs. All of these expenses were reasonable and necessary for the successful prosecution of this case. Plaintiff's Counsel advanced these costs, with no guarantee of recovery. These costs should be approved as reasonable. *See, e.g., Abernathy,* Final Approval Order and Final Judgment, Dkt. No. 47, No. 1:20-CV-00042 (D. Utah Sept. 14, 2021) (approving costs in the amount of $14,427.28).

## V.    **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion and enter the accompanying Proposed Order, attached hereto as Exhibit 2.

Dated:  March 10, 2023                                      Respectfully submitted,

                                                                          /s/  *Sarah R. Schalman-Bergen*

                                                                          Sarah R. Schalman-Bergen
                                                                          Krysten Connon
                                                                          **LICHTEN & LISS-RIORDAN, P.C.**
                                                                          729 Boylston St., Suite 2000
                                                                          Boston, MA 02116
                                                                          Tel.: (617) 994-5800

Fax: (617) 994-5801
ssb@llrlaw.com
kconnon@llrlaw.om

April Hollingsworth (Bar No. 9391)
Katie Panzer (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE**
1881 South 110 East
Salt Lake City, Utah 84105
Tel: (801) 415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@ aprilhollingsworthlaw.com

Ryan Allen Hancock
**WILLIG, WILLIAMS & DAVIDSON**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com

Michaela Wallin
Alexandra K. Piazza
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
mwallin@bm.net
apiazza@bm.net

*Attorneys for Plaintiff and the Proposed FLSA
Collective*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 10th day of March, 2023.

/s/ *Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen
