IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KEVIN MCARDLE, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON LOGISTICS, INC.,<br><br>Defendants. | **ORDER GRANTING IN PART UNOPPOSED MOTION TO APPROVE SETTLEMENT**<br><br>Case No. 2:23-cv-00121-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

AZ Transport Group, LLC ("AZTG") provides last mile delivery services. Compl., ECF No. 1 at 2. Amazon.com, Inc and Amazon Logistics, Inc., (collectively, "Defendants") contract with AZTG to deliver packages to Amazon customers. *Id.* From January to November 2018, Plaintiff Kevin McArdle ("McArdle") worked as a delivery associate for AZTG. *Id.* at 3.

On April 26, 2019, McArdle notified Defendants that he intended to file a lawsuit, individually and on behalf of all delivery associates in the Settlement Collective,[1] against Defendants. FLSA Collective Action Settlement Agreement ("Settlement Agreement") Ex. 1, ECF No. 26-2 at 4. McArdle alleged that Defendants had failed to pay him for overtime work and that they had miscalculated overtime wages in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Specifically, McArdle alleges that while he was assigned to

---

[1] "'Settlement Collective Members' means Plaintiff and all Delivery Associates who were paid by AZ Transport Group, LLC to deliver packages to customers of Amazon.com in the United States at any time between January 3, 2017 through November 10, 2018." Settlement Agreement, ECF No. 26-2 at 4.

work forty-hour weeks, which consisted of ten-hour shifts scheduled over four days, he regularly worked over ten hours during each shift. Compl. at 3–4, ECF No. 1. McArdle alleges that Defendants did not compensate him for his overtime work and that Defendants undercalculated overtime rates by excluding bonus payments from their rate calculations. *Id.* at 6.

McArdle invited Defendants to resolve his claims before he filed a lawsuit. Settlement Agreement at 1. After a two-year alternative dispute resolution process, which included discovery and three mediation sessions, the parties reached a settlement agreement on December 22, 2022 ("Settlement Agreement"). *Id.* McArdle now moves, unopposed, for (1) certification of the settlement collective, (2) approval of the notice of settlement, (3) approval of the Settlement Agreement, (4) approval of attorneys' fees, costs, a service award to McArdle, and appointment of Utah Legal Services as the *cy pres* recipient of the settlement fund, (5) an order prohibiting any opt-in member of the settlement collective from litigating any of the released claims, and (6) dismissal of this case with prejudice. ECF No. 26. For the reasons explained below, this motion is GRANTED IN PART.

## LEGAL STANDARD

It is unclear whether parties must obtain court approval for FLSA agreements. *Compare Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) ("The FLSA itself does not require court approval for all FLSA settlements."); *Brueningsen v. Resort Express Inc.*, No. 2:12-cv-843, 2016 WL 10537003 (D. Utah May 23, 2016) *and Campbell v. C.R. England, Inc.*, No. 2:13-cv-262, 2015 WL 5773709 (D. Utah Sept. 30, 2015) *with Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183988, at *2 (D. Colo. May 11, 2018)("[T]he Court will go forward under the assumption that it must approve the Proposed Settlement.") *and Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th

2

Cir. 1982) (explaining that the court has a duty to ensure that FLSA wage-payment settlements represent a "fair and reasonable resolution of a *bona fide* dispute."). "[W]hile there is disagreement over whether FLSA settlements must be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements may be approved by the Court." *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *6 (D. Colo. Feb. 11, 2019). In light of this ambiguity, the court GRANTS plaintiff's request to evaluate the Settlement Agreement.

## ANALYSIS

### I.   Class Certification for Settlement Purposes and Approval of Settlement Notice

"Section 216(b) [of the FLSA] provides for a class action where the complaining employees are 'similarly situated.'" *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). Courts may use a two-stage process to determine whether plaintiffs are similarly situated. *Id.* Stage one "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (internal quotation omitted). At stage two, which occurs after discovery has been completed, the court examines the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required . . . before instituting suit." *Id.* at 1103 (internal citation omitted).

McArdle proposes a settlement class that consists of "all Delivery Associates who were paid by AZ Transport Group, LLC to deliver packages to customers of Amazon.com in the United States at any time between January 3, 2017 through November 10, 2018." Settlement Agreement, ECF No. 26-2 at 4. All the delivery associates in the proposed class signed contracts with AZTG

and delivered packages to Amazon.com customers. ECF No. 26 at 18. AZTG applied the same overtime pay and rate calculation policies, which McArdle asserts violate the FLSA, to the other delivery associates in the proposed class. Therefore, the court is persuaded that the delivery associates in the putative class are similarly situated to McArdle.

Having concluded that the class members are similarly situated, the court moves to procedural fairness. Unlike a Rule 23 class, which is opt-out, an FLSA class is opt-in. *See Lee v. Best Budz LLC*, No. 19-CV-02430-KMT, 2019 WL 5964966, at *3 (D. Colo. Nov. 12, 2019) ("This court agrees that the peculiar opt-in nature of an FLSA collective action anticipates that all parties who settle are actively participating and are represented by counsel."). Class members are provided with the following notice on the back of their checks.

> By depositing or cashing this check, I am opting into and affirm my release of Amazon.com, Inc., Amazon Logistics, Inc., AZ Transport Group, LLC, and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *McArdle v. Amazon.com, Inc., et al.* I affirm that I will not sue or assert any of the Released Claims, including all FLSA claims, against any of the Released Parties.

Settlement Agreement, Ex. 26-2 at ¶ 23. In other words, delivery associates who want to participate in the class must cash their checks. Any delivery associate who does not want to participate simply elects against redeeming his or her check and then independently proceeds against Defendants. *See Regalado v. Albuquerque Mail Serv., Inc.,* No. 222CV00012MISDLM, 2023 WL 3649001, at *3 (D.N.M. May 25, 2023) (explaining that judicial approval is not required for opt-in FLSA wage settlement agreements). The court is also persuaded that the notice is sufficiently tailored as the release pertains only to the overtime wage claims arising from this dispute. *See Barbosa v. Nat'l Beef Packing Co., LLC*, No. CIV. A. 12-2311-KHV, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014) ("It is inappropriate to require plaintiffs to sign overly-broad releases to receive settlement proceeds in FLSA cases."). Finally, the notice is written in clear language.

In short, the court is persuaded that the proposed class members are similarly situated to McArdle, that the settlement class is procedurally fair, and that the language on the back of the checks provides potential class members with adequate notice. Therefore, the court certifies the settlement collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only.

## II.   Evaluation of the Settlement Agreement

Having reviewed the notice and certified the settlement collective, the court evaluates whether the proposed settlement complies with the FLSA. When presented with a proposed settlement, courts must first determine whether the settlement resolves a *bona fide* dispute—one that involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (quoting *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013)). If the dispute is *bona fide*, the court then asks two questions: First, is the settlement fair and reasonable to all parties concerned? And second, does the proposed settlement contain a reasonable award of attorneys' fees? *See Morton v. Transcend Servs., Inc.*, No. 15-cv-01393, 2017 WL 977812, at *1 (D. Colo. Mar 13, 2017); *Lynn's Food Stores*, 679 F.2d at 1354.

### A.   Bona Fide Dispute

First, the dispute must be *bona fide*. To meet this requirement, parties requesting approval of a FLSA settlement must present the court: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Morton*, 2017 WL 977812, at *1. "The mere existence of an adversarial lawsuit is not enough to

satisfy the *bona fide* dispute requirement." *Id.* (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)).

Here, the parties indicate that they dispute all allegations relating to Defendants' liability. McArdle argues that he regularly worked beyond the scheduled forty-hour shifts delivering packages, but that Defendants failed to compensate him for his overtime. McArdle also asserts that Defendants incorrectly excluded bonus incentive payments in calculating overtime wage rates. Defendants deny that they failed to pay McArdle for overtime work and incorrectly calculated overtime compensation rates. Schalman-Bergan Decl., ECF No. 26-1 at ¶ 26. Moreover, Defendants contend that McArdle cannot maintain a collective action and deny joint liability for AZTG's alleged failure to properly compensate McArdle. *Id.* Given the parties' positions, the court finds that a *bona fide* dispute exists.

B. Fair and Reasonable to the Parties

Because there is a *bona fide* dispute, any settlement resolving it must be fair and reasonable to the parties. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Morton*, 2017 WL 977812, at *2. "Courts considering [the fairness of] both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement." *Id.* (citing *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005)). In the Tenth Circuit, the factors for evaluating the fairness of a class action settlement under Rule 23(e) are:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) [whether] the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Here, those factors are met. The parties are represented by experienced counsel, and the settlement is the product of arm's-length negotiations in the adversarial context of this case. Serious and challenging issues of law and fact exist, making the ultimate outcome difficult to predict. The gross settlement amount is one million two hundred thousand dollars and zero cents ($1,200,000.00). Settlement Agreement Ex. 1, ECF No. 26-2 at 3. Clearly, an immediate recovery of an amount that is "more than approximately 3.92 times Plaintiff's lowest calculations" is preferable to the uncertain possibility of future relief after difficult litigation. Schalman-Bergan Decl., ECF No. 26-1 at ¶ 33. It is also clear that Defendants prefer a certain and immediate expenditure to the uncertainty of a long and expensive litigation process. And the parties have represented to the court that the settlement is fair and reasonable.

The settlement agreement also furthers the purpose of the FLSA: to protect employees' rights from employers who generally wield superior bargaining power. The delivery associates will receive a settlement award that provides them with substantial recovery for their allegedly unpaid overtime wages, which they otherwise may be unlikely to recover. Any delivery associate who decides that the settlement amount is insufficient may decline the payment. Consequently, the court finds that the settlement is fair and reasonable.

### III. Attorneys' Fees, Costs, Service Award, and *Cy Pres* Recipient

#### A. Attorneys' Fees

The settlement must also contain a reasonable award of attorneys' fees. "Reasonable attorneys' fees are those 'adequate to attract competent counsel' that do not 'produce windfalls to attorneys.'" *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The court may determine attorneys' fees by either reviewing the attorneys' hourly rates and the number of hours worked (known as the loadstar

method) or by reviewing the percentage of the fund requested. *Id.* In common fund class action cases, the Tenth Circuit prefers the percentage of the fund method. *Id.* Courts may consider the following factors in determining whether the percentage of the fund to be awarded as attorneys' fees is reasonable:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454–55 (10th Cir. 1988) (internal citation omitted).

Counsel requests $400,000 in attorneys' fees, which represents one third of the total settlement amount. The Tenth Circuit has routinely approved attorneys' fees in the range of 22–37.3%. *See Voulgaris*, 60 F.4th at 1263. Counsel asserts that they obtained an excellent result as the gross settlement amount is "3.92 times Plaintiff's lowest calculations . . . ." Schalman-Bergan Decl., ECF No. 26-1 at ¶ 33. Counsel maintains that this case involved difficult legal and factual matters and that they are very experienced class action employment attorneys. *Id.* at ¶ 41.

The court does not doubt that the case is complex, counsel is heavily specialized, and that the settlement offer is generous. *Id* at ¶¶ 1–19, 43. However, $400,000 in attorneys' fees is excessive, even after accounting for these factors. While courts frequently grant the amount of one third of the settlement fund as attorneys' fees in FLSA cases, the total attorneys' fee award is traditionally much lower than the amount requested here. *See McKeon v. Integrity Pizza LLC*, No. 18-CV-0932-WJM-KLM, 2020 WL 6782238, at *4 (D. Colo. Nov. 18, 2020) (approving an attorneys' fee award of $133,000, representing one-third of the settlement amount); *Swanson v. Cathedral Energy Servs., Inc.*, No. 17-CV-01578-DDD, 2019 WL 4858453, at *3 (D. Colo. Oct.

2, 2019) (approving an attorneys' fee award of $104,000, representing 36% of the settlement amount).

Class counsel asserts that they have "spent hundreds of hours prosecuting this matter since 2019." Schalman-Bergan Decl., ECF No. 26-1 at ¶ 42. However, the specific number of hours devoted to this matter, and an accounting of how the time was allocated is notably absent from both the briefing and the affidavit. It is unclear whether counsel worked closer to 200 hours (in which case, a $400,000 award implies that the attorneys bill at $2,000 per hour) or 1,000 hours (in which case, the attorneys would be billing at a more reasonable rate of $400 per hour).

The party requesting attorneys' fees bears the burden of demonstrating that the fee request is reasonable. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). Counsel has not justified a fee request of $400,000 in this case. The court believes that a $264,000 attorneys' fee award, representing 22% of the settlement amount, is more appropriate. The lower range of the Tenth Circuit guideline is more reasonable because this lawsuit was filed only after a proposed settlement agreement had already been negotiated and counsel did not provide the court with billing records. Therefore, the court reduces the attorneys' fee award from $400,000 to $264,000.

B. Costs

Counsel requests reimbursement of up to $15,000 in costs. 29 U.S.C. § 216(b) permits plaintiffs to recover attorneys' fees and related costs. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) (internal quotation omitted) ("[A]n attorney who creates or preserves a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred."). Counsel represents that the costs include mediation costs, legal research costs, and printing costs. Schalman-Bergan Decl., ECF No. 26-1 at ¶ 44. As counsel will

continue to incur costs in administering the settlement fund, the court concludes that it is reasonable to permit counsel to reimburse costs, not to exceed $15,000.

    C.    Service Award

McArdle also asks the court to approve a $10,000 service award.

> When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation.

*McKeon v. Integrity Pizza LLC*, No. 18-CV-0932-WJM-KLM, 2020 WL 6782238, at *4 (D. Colo. Nov. 18, 2020) (approving $5,000 incentive payment to the named plaintiff).

Counsel asserts that McArdle spent a substantial amount of time providing information in preparation for mediation and reviewing the Settlement Agreement. Schalman-Bergan Decl., ECF No. 26-1 at ¶ 38–39. McArdle also took on the substantial and direct risk of serving as the named party in this matter. *See UFCW Loc. 880-Retail Food Emps. Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009) ("[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.").

While the court does not doubt that McArdle contributed to this Settlement Agreement, the court is skeptical that McArdle provided $10,000 worth of value. In *Cazeau*, the named plaintiff contributed 30–35 hours by independently seeking out counsel and identifying other eligible class members. *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *8 (D. Utah Apr. 29, 2021). The court approved a $12,500 incentive award for her efforts. *Id.* The other named plaintiff in *Cazeau* received a $12,500 incentive award because she spent 55–60 hours on the matter and requested time off work to travel to the mediation. *Id.* In contrast, here, counsel has not

provided the court with any indication of the amount of time that McArdle spent negotiating this settlement. McArdle does not assert that he participated in the mediation or that he performed additional tasks that benefitted the class. Considering all the relevant factors, including the risk of serving as a named plaintiff, the court grants McArdle a service award in the amount of $5,000.

### D. *Cy Pres* Recipient

McArdle also asks the court to approve Utah Legal Services as the *cy pres* recipient of the settlement fund. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (internal citation omitted). "[C]ourts have permitted cy pres awards in class action settlements for 'a charitable purpose reasonably approximating the interests pursued by the class . . . .'"*Allred v. ReconTrust Co., N.A.,* 787 F. App'x 994, 996 (10th Cir. 2019) (quoting *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013)). A *cy pres* remedy should "account[] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* at 997 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819–20 (9th Cir. 2012)).

Here, the court is persuaded that Utah Legal Services promotes the purposes of the FLSA. Utah Legal Services provides legal help to low-income Utahns in non-criminal cases. ECF No. 26 at 7 n.2. "[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks and alteration omitted). To promote these goals, the FLSA provides attorneys' fees. 29 U.S.C. § 216(b). As Utah Legal Services provides legal assistance in civil matters to low income Utahns, they may be an organization that provides legal assistance to delivery associates who seek

to recover for unpaid overtime work. Accordingly, the court concludes that Utah Legal Services is an appropriate *cy pres* recipient of the settlement fund.

## IV.     Bar on Released Claims and Dismissal of Action

Finally, McArdle asks the court to issue an order "barring any claims released by the Settlement Agreement by Plaintiff and any member of the Settlement Collective who participates in the settlement as set forth in the Settlement Agreement." ECF No. 26 at 2. However, such an order would be premature. At this stage of the proceedings no class member has agreed to the Settlement Agreement yet, let alone filed a lawsuit that breaches of the Settlement Agreement. Thus, the court DENIES this request.

McArdle also asks the court to dismiss this action with prejudice. ECF No. 26 at 5. Defendants do not oppose this motion. *Id.* Having reviewed Rule 41(a)(2) of the Federal Rules of Civil Procedure, the court orders the dismissal of this action with prejudice.

## CONCLUSION & ORDER

For the reasons above, the court **GRANTS IN PART** the unopposed motion for approval of the Settlement Agreement. ECF No. 26.

The court orders as follows:

1) The Parties' Settlement Agreement (attached to the Judgment as Exhibit 1) is approved as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act;

2) For settlement purposes, the Court certifies the following as a collective pursuant to 29 U.S.C. § 216(b):

> All current and former Delivery Associates who were paid by AZ Transport Group LLC to deliver packages to customers of Amazon.com in the United States at any time between January 23, 2017 through November 10, 2018.

3) The Court finds that the proposed Service Award for Plaintiff is appropriate. The Court approves a payment of Five Thousand Dollars ($5,000.00) to Plaintiff McArdle, subject to all requirements of the Settlement Agreement;

4) The Court approves Plaintiff's Counsel's request for fees in the amount of twenty-two percent of the Gross Settlement Amount ($264,000.00), plus out-of-pocket costs not to exceed Fifteen Thousand Dollars ($15,000.00);

5) Analytics Consulting LLC is approved as Settlement Administrator;

6) Utah Legal Services is approved as the *cy pres* recipient for any monies remaining in the Reserve Fund.

7) The Court approves the payment plan to the Settlement Collective Members and the Notice, attached as Exhibit A to the Settlement Agreement, and authorizes dissemination of the Notice to members of the Settlement Collective.

Signed July 18, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge